UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KINDIA ROMAN
        Plaintiff

V.

TOWN OF TISBURY, CHIEF MARK SALOIO
and DETECTIVE MAX SHERMAN
in their Official and Individual Capacities
        Defendants

## COMPLAINT

### INTRODUCTION

The Plaintiff, Kindia Roman, brings this action seeking redress for substantial violations of her rights pursuant to the Federal Civil Rights Act, 42 U.S.C. § 1983, as well as under the Massachusetts Civil Rights Act. The Defendants, individually and collectively, while acting under the color of state law, have attempted to interfere with, and did interfere with, the Plaintiff's exercise and enjoyment of rights secured by the Constitution and laws of the United States and the Massachusetts Declaration of Rights, including, but not limited to, her right to free speech, right to Procedural and Substantive Due Process, her right to continued employment and the right to participate in and petition and seek redress from Governmental abuse without retaliation.

The Defendants, individually and collectively, have discriminated and retaliated against the Plaintiff based upon her race, gender and sexual identification. As described herein, the Defendants' conduct and/or behavior as described more fully below is also in violation of, *inter alia,* M.G.L. c. 151B. Respondents' conduct is in violation of, *inter alia,* M.G.L. c. 151B, M.G.L. c. 151B §§ 1, 4, 4(1), 4(4), 4(4A), 4(5) other provisions of M.G.L. c. 151B, and Title VII. The Plaintiff brings claims for violations of the common law as well.

### JURISDICTION

Plaintiff asserts Federal jurisdiction under 28 U.S.C. § 1331, and pendent jurisdiction of her state law claims under 28 U.S.C. § 1367.

## PARTIES

1. The Plaintiff, Kindia Roman, is an individual residing in Westwood, Norfolk County, the Commonwealth of Massachusetts.

2. Defendant Town of Tisbury, is a municipality duly incorporated under the laws of the Commonwealth of Massachusetts

3. The Defendant, Chief Mark Saloio (Hereinafter "Defendant Saloio" or "Chief Saloio"), is employed by the Tisbury Police Department, and currently holds the rank of Chief within the Department.

4. The Defendant Max Sherman, (Hereinafter "Defendant Sherman") is employed by the Tisbury Police Department, and currently holds the rank of Detective.

## ADMINISTRATIVE PREREQUISITES

5. The Plaintiff has previously filed a timely Charge of Discrimination at the Massachusetts Commission Against Discrimination, MCAD Docket Number charging the Defendants with substantial violations of Plaintiff's rights under the Massachusetts anti-discrimination laws, M.G.L. c. 151B.

6. The Charge of Discrimination was filed jointly with the Massachusetts Commission Against Discrimination and Equal Employment Opportunity Commission within the time required by Massachusetts General Laws Chapter 151B.

7. Plaintiff has withdrawn her Charge of Discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission.

## FACTS

8. The Plaintiff, Kindia Roman (hereinafter "Plaintiff" or "Ms. Roman") is thirty-nine years old and identifies as a gay Hispanic woman. She has a life partner, Danielle Clermont, who is also a police officer.

9. Prior to her employment at the Town of Tisbury, the Plaintiff, Kindia Roman (Hereinafter "Plaintiff" or "Ms. Roman"), was employed from 2009 until November of 2013 as a Police Officer in Titusville, Florida.

10. While employed by the City of Titusville, the Plaintiff as a Community Service Officer and was a part of the Department's Hostage Negotiation Team.

11. The Plaintiff began working for the Defendant Town of Tisbury Police Department on January 29, 2014. The Plaintiff had no discipline during the entirety of her career with the Tisbury Police Department.

12. The Plaintiff is, and has always been, a dedicated, energetic and hardworking employee. She was a respected member of the Tisbury Police Department (hereinafter "TPD" or "Department") and has been an active participant and community caretaker within the Town of Tisbury at large.

13. At the time of her employment, the Tisbury Police Department consisted of approximately 12 full time officers, 3 Sergeants, one Lieutenant and a Chief of Police. The number of officers may vary and increase during the course of the summer months.

14. The Town of Tisbury is a small community within the island of Martha's Vineyard, where most residents know each other on a personal basis, including members of the police department. At various periods of time during her employment with the Town of Tisbury, Ms. Roman was not only the sole female police officer, but also the only Hispanic gay female on the Department.

15. The Plaintiff's identity as a Hispanic gay female was not well received by several members of the Department, including, but not limited to the Defendant Max Sherman. Mr. Sherman frequently used vulgar slurs when referring to the Plaintiff or her life partner.

16. When another Tisbury Officer first met the Plaintiff, the Plaintiff attempted to shake his hand. The officer refused to shake hands and walked past her and had to be instructed to return to greet her.

17. Despite these issues, the Plaintiff was a successful police officer for the Town of Tisbury. Her abilities were recognized by the Town and within a short period of time after her hiring, she was promoted to Detective in June of 2015 and subsequently promoted to the rank of Sergeant approximately one year later in June of 2016.

18. When the Defendant Max Sherman ("Sherman") was initially hired by the Defendant Town of Tisbury as a full-time police officer in 2015, Defendant Sherman was required to report to the Plaintiff as his supervisor.

19. Despite the Plaintiff's qualifications and seniority, Defendant Sherman regularly refused to follow her orders and would contact other officers to confirm that the Plaintiff had the authority to issue him such orders or instructions.

20. The Plaintiff's supervisor at this time was Lieutenant Eerik Meisner. Lt. Meisner had also previously worked at the Titusville, Florida Police Department prior to being hired by the Town of Tisbury.

21. Defendant Sherman and other officers would state that the Plaintiff was Lieutenant Meisner's "side chick" and "side piece," falsely implying that she had an inappropriate relationship with Lt. Meisner and had only received her job due to her relationship with Lt. Meisner.

22. On numerous occasions during her employment with the TPD, the Plaintiff was referred to by other officers as a "token" officer, implying that she did not earn her accomplishments, and that she was only hired and promoted because she was a minority woman.

23. Several officers also referred to the Plaintiff as a "hot tamale" and used this derogatory term because they knew Plaintiff was Hispanic.

24. Although the Plaintiff was personally offended by these types of comments, she initially attributed them to working within a male dominated environment and attempted to ignore them.

25. As a consequence of these comments inferring an inappropriate relationship with her supervisor, the Plaintiff felt compelled to tell members of the Department that she was gay. Her identity as a gay woman was known by all of the Department, including Defendant Max Sherman.

26. When the Tisbury Police Department promoted the Plaintiff to Detective, Sherman's inappropriate behavior escalated. Defendant Sherman regularly and openly stated to other officers that the Plaintiff "didn't know what [she] was doing" and that the Plaintiff was hired "only because the Lieutenant knew [her]."

27. On numerous occasions, the Plaintiff would attempt to speak to Defendant Sherman and officers from the previous shift when she arrived for duty. Defendant Sherman, and other officers that he was personally friends with, would ignore her and refused to provide the Plaintiff with relevant information from their shift.

28. During this time period, Defendant Sherman was serving as the Tisbury Police Union President. As evidence of Sherman's bias and animosity toward Plaintiff, he attempted to prevent the Plaintiff from receiving a $5,000.00 stipend that previous male Detectives had received upon their promotion.

29. When the Plaintiff was promoted to Sergeant, the Union, once again, led by Defendant Sherman, voted to give the Plaintiff a lower percentage raise than other similarly situated male Sergeants had previously received.

30. Sherman's animosity toward the Plaintiff was palpable. Sherman openly referred to women in general, including the Plaintiff, by use of the word "cunt." He also used the word "dyke" when referring to the Plaintiff or her life partner.

31. Defendant Sherman, by his speech and actions, also encouraged other officers to engage in discriminatory conduct toward the Plaintiff.

32. Defendant Sherman's highly offensive personal slurs about the Plaintiff and/or her partner made interactions with him and other officers that were present at the time, tense and uncertain.

33. During the summer of 2017, the Plaintiff contacted an attorney for the Town of Tisbury and stated that she had been discriminated against by members of the Department regarding her stipends and promotional pay raises.

34. The Plaintiff also made the Defendants aware that racism was prevalent within the Tisbury Police Department and that Brazilian residents of Martha's Vineyard had complained that officers referred to them by using the derogatory term "zillies."

35. Despite her legitimate objections and complaints, the Defendant Town of Tisbury never investigated the issues raised by the Plaintiff and failed to even acknowledge, let alone take prompt remedial or disciplinary action to address this conduct.

36. On February 1, 2018, the Defendant Town of Tisbury issued a written "Discrimination Prevention Policy."

37. At the time, Police Chief Daniel Hanavan (hereinafter "Chief Hanavan") was the head of the Tisbury Police Department until his retirement in 2018.

38. The Plaintiff reported the above-described inappropriate behavior by Defendant Sherman and other officers to her direct supervisor, Lt. Meisner, who in turn reported it to Chief Hanavan.

39. Such conduct would clearly have constituted a basis for significant disciplinary action against these officers as well as an investigation as mandated by the Town's Discrimination Prevention Policy.

40. It is important to note that certain members of the Tisbury Police Department are/were personally related to, or close personal friends with former members of the Tisbury Board of Selectmen. This relationship seemed to embolden their actions and gave them the appearance of a lack of accountability.

41. The Defendant Town of Tisbury's "Discrimination Prevention Policy" is incorporated for all purposes.

42. Tisbury's Discrimination Prevention Policy prohibited, at a minimum, the following:

    *Prohibit any kind of discrimination based upon race, color, religion, national origin, ancestry, sex gender identity, age, handicap (disability), participation in complaint related activities, sexual orientation, genetics, or active military or veteran status or any other basis prohibited under applicable law.*

43. In the Spring of 2018, members of the Tisbury Police Union elected the Plaintiff as the President of their Union in place of Defendant Max Sherman. The removal of Sherman as President of the Union only served to increase his level of anger toward the Plaintiff.

44. The Plaintiff regularly complained to her supervisors, including the Chief of Police regarding Defendant Sherman and other officers' inappropriate actions, conduct and behavior that was both discriminatory and racist.

45. The difficulty of working in this type of atmosphere as a Hispanic gay woman became intolerable, causing the Plaintiff to seek employment with other police departments off of Martha's Vineyard Island.

46. In May 2018, the Plaintiff became aware of an opening for a police officer position at the Walpole Police Department ("Walpole PD"). The Plaintiff applied for that position despite the fact that the job change would entail a demotion from the rank of Sergeant to patrolman and the salary would be significantly less than what she was earning at the TPD.

47. However, when the Plaintiff attempted to leave the hostile work environment in Tisbury and pursue the job opportunity in the Town of Walpole, the Defendant Sherman and others within the Department retaliated against her by directly interfering with the hiring process at other police departments.

48. On May 30, 2018, the Plaintiff had her first interview with a panel of five individuals, including the Walpole Chief of Police. Following her interview, the panel advised the

Plaintiff that they liked her as a candidate and that they were going to run a background check as soon as possible.

49. On June 11, 2018, the Plaintiff spoke to a Deputy Chief from the Walpole Police Department and asked if it was presumptuous for her to rent an apartment in Norwood. He replied, "go ahead," implying that the Plaintiff would be offered the position at the Walpole Police Department.

50. The Walpole Deputy Chief further stated that he would have appointed the Plaintiff at the most recent Town Hall meeting if it were not for the short notice. The Deputy Chief projected the Plaintiff's appointment to be mid-July 2018, following the next Town Hall meeting. Shortly thereafter, the Plaintiff put a deposit on an apartment in Norwood.

51. On June 13, 2018, based upon her application and the interview process with the Walpole Police panel, the Plaintiff supplied Tisbury Police Department with her two weeks' notice and letter of resignation.

52. The Plaintiff's final day at work for Tisbury was June 22, 2018. Chief Hanavan told the Plaintiff on this date that she was leaving in "Good Standing" and if she ever wanted to return there would always be a place for her at the Tisbury Police Department.

53. On June 25, 2018, the Plaintiff rented an apartment and moved to Norwood with her partner, Danielle Clermont.

54. Shortly thereafter the Plaintiff received notification that the Walpole Police Department unexpectedly wanted to conduct a second interview of her.

55. On July 12, 2018, the Plaintiff met with the panel, who for the first time, raised the issue of Plaintiff's relationship with Danielle Clermont and questioned her judgment. The Plaintiff was shocked by the panel's questions regarding her personal relationship with Ms. Clermont.

56. During this meeting, the Plaintiff was also told that the Walpole Police Department had been "notified" that the Plaintiff had allegedly attempted to "overthrow" the previous Tisbury Police Union leadership.

57. The Plaintiff stated that in the Spring of 2018, several members of the Tisbury Police Union were unhappy with the leadership of Defendant Max Sherman and had elected her as a replacement.

58. Because of Defendant Sherman's animosity toward her, the Plaintiff asked the members of the panel if they had obtained this information from Defendant Max Sherman. Neither the Walpole Deputy Chief nor other panel members would disclose the source of this information.

59. After this meeting was concluded, it was clear that the Plaintiff would not be offered a position with the Walpole Police Department.

60. Defendant Sherman subsequently boasted to other Tisbury officers that he was the person who had spoken to the Walpole Police about the Plaintiff and her partner being in a gay relationship. Defendant Sherman openly bragged to other officers that he had "torpedoed" the Plaintiff's job opportunity with the Walpole Police Department.

61. Defendant Sherman's actions had a ripple effect upon the Plaintiff's subsequent attempts to secure law enforcement employment with other municipal police departments, including, but not limited to, the Wellesley and Concord Police Departments, as well as Plaintiff's attempts to return to the Tisbury Police Department.

62. On July 13, 2018, the Plaintiff contacted her former supervisor, Lt. Meisner to inform him that someone, ostensibly Defendant Sherman, had intentionally conveyed discriminatory information regarding her to the Walpole Police Department that resulted in her not securing a job.

63. Lt. Meisner stated that the Plaintiff would be able to return to the Tisbury Police Department as a Sergeant because of the short separation time from her earlier resignation on June 22, 2018.

64. On July 19, 2018, the Plaintiff received a call from Lieutenant Kilroy of the Walpole Police Department confirming that she was no longer a candidate for the police officer position in the Department. No explanation was provided to the Plaintiff.

65. Several members of the TPD were upset and angry once they learned that Defendant Sherman had "torpedoed" the Plaintiff's attempt to gain employment with the Walpole Police Department and reported Sherman's conduct to Chief Hanavan.

66. Chief Hanavan instructed Lt. Meisner to conduct an Internal Affairs investigation of Defendant Sherman's conduct.

67. Lt. Meisner advised the Plaintiff that he would investigate what had been done to the Plaintiff. Lt. Meisner also told the Plaintiff that she had until July 24, 2018 to return to the Tisbury Police Department.

68. The Plaintiff then attempted to become reinstated to the Tisbury Police Department in her former position as a Sergeant.

69. On July 24, 2018, the Plaintiff attended a Tisbury Town Meeting. Plaintiff was on the Board of Selectmen's agenda to be reinstated as either a full-time or Special Officer. Only two of the Town's Selectmen were present. Selectmen Melinda Loberg stated that she would be happy to have the Plaintiff return as a Tisbury police officer.

70. However, another Selectmen, James Rogers, (Tisbury Officer Jeremie Rogers' father), stated that he wanted additional time to consider Plaintiff's reinstatement and asked her to return to another meeting the following week on July 31st.

71. After this postponement, the Plaintiff raised her concerns of a conflict of interest regarding Selectmen James Rogers to Chief Hanavan, stating that Selectmen Rogers should recuse himself from any decisions involving the Plaintiff's reinstatement.

72. The Plaintiff reminded Chief Hanavan that Selectmen Rogers' son, officer Jeremie Rogers, was close personal friends with Defendant Sherman and held similar views on Plaintiff's identity as a gay woman.

73. The Plaintiff also told Chief Hanavan that officer Rogers had previously delivered a letter to the Board of Selectmen opposing Danielle Clermont's (Plaintiff's partner) appointment as a police officer by the Town of Tisbury.

74. On July 31, 2018, the Special Meeting of the Board of Selectmen that was scheduled to discuss the Plaintiff's reinstatement was suddenly cancelled, ostensibly because Town Manager John Grande was unable to attend. The issue of the Plaintiff's reinstatement was then rescheduled for August 14, 2018.

75. The Plaintiff avers that these postponements were done in a deliberate attempt to discriminate against her and avoid a public hearing on her reinstatement in violation of the Town's own Discrimination Prevention Policy ("DPP").

76. Tisbury's Discrimination Prevention Policy states that the Town shall:

    *Make decisions about employment so as to encourage the development of a diverse workforce.*

    *Ensure that promotional and employment decisions are made in accordance with the principles of equal employment opportunity, by imposing only valid, job related requirements for employment and promotion.*

77. On August 1, 2020, the Plaintiff attended a meeting in Tisbury with Town Manager John Grande and Chief Daniel Hanavan. During that meeting, Mr. Grande stated that he was going to inform the Tisbury Police Union of Plaintiff's pending reinstatement to the Department.

78. Mr. Grande stated that he wanted to ensure he was being "transparent" with the information he would be providing to the other Tisbury officers. The Plaintiff disputed this contention and stated that by doing so, it would ensure efforts on the part of Defendant Sherman to prevent her reinstatement.

79. Approximately one week later, on or about August 8, 2018, the Plaintiff received notice that her name had been removed from the Board of Selectmen's agenda for the upcoming August 14, 2018 meeting regarding her reinstatement.

80. Although no formal vote was taken by the Board, the Plaintiff was now officially prevented from returning to work at the TPD, allegedly due to a "hiring freeze" imposed by the Defendants.

81. According to Tisbury Police Chief, Daniel Hanavan, who was planning on retiring, the Board of Selectmen didn't want to hire any new police officers until after the Town appointed a new Police Chief.

82. Despite the fact that the Plaintiff was not a "new hire" and fully qualified to return as a Sergeant, she was informed that she would have to reapply after a new Chief was appointed.

83. Lt. Meisner also contacted the Plaintiff and stated that the Town had decided to "freeze" any additional hiring, despite the existence of six open police officer positions that had been available a week prior. These job openings had been posted shortly before the Plaintiff left the Department in June of 2018.

84. The last "hiring-freeze" by the Town of Tisbury was when the Plaintiff's partner, Danielle Clermont was under consideration to be appointed as a Tisbury police officer.

85. Although the Plaintiff was fully trained and certified as a police officer with no disciplinary history, she was wrongfully discriminated against by the Defendants and denied employment with the Tisbury Police Department.

86. The Plaintiff subsequently learned that Defendant Max Sherman also attempted to interfere with her hiring by the Town of Westwood Police Department.

87. In late August of 2018, Lt. Meisner completed his Internal Affairs investigation of Defendant Max Sherman. Lt. Meisner concluded that Defendant Sherman had provided false information to the Walpole Police Department maliciously with the specific intent of preventing the Plaintiff from securing employment there. (Exhibit 1)

88. Incredibly, despite the conclusions reached by Lt. Meisner's Internal Affairs investigation, Defendant Max Sherman was never disciplined by the Town of Tisbury for his actions.

89. The Town of Tisbury determined that they would not proceed further against Defendant Sherman on a disciplinary basis until a new Chief of Police was appointed.

90. In September of 2019, the Defendant Town of Tisbury promoted Defendant Sherman to the rank of Sergeant, ironically to the same position previously held by the Plaintiff.

91. As a consequence of the Town's actions, the Plaintiff filed a formal complaint with the Massachusetts Commission Against Discrimination against the Town of Tisbury and Defendant Sherman.

92. Despite the filing of her MCAD complaint, the acts of retaliation and discrimination by the Defendants continued against the Plaintiff.

93. In November of 2018, the Town of Tisbury appointed Defendant Mark Saloio to the position of Chief of Police.

94. Newly appointed Chief Mark Saloio was well versed with the allegations made by the Plaintiff in her MCAD complaint. Chief Saloio spoke to his then executive officer, Lt. Meisner on several occasions in November and December of 2018 regarding the Plaintiff's MCAD complaint.

95. In early January 2019, Defendant Chief Saloio called Lt. Meisner into his office and asked if he had recently spoken with the Plaintiff.

96. Lt Meisner told Chief Saloio that he had talked to the Plaintiff just prior to the holidays. Chief Saloio acted surprised by Lt. Meisner's answer. Defendant Saloio then told Lt. Meisner, "You better not talk to her anymore."

97. Lt. Meisner explained to Chief Saloio that the Plaintiff and her family were friends of his family and his wife. Chief Soloio responded, "Well attorneys representing the Town of Tisbury are going to call you and talk to you about this (Plaintiff's lawsuit) case. It would be in your interest to be supportive of the Town."

98. The Plaintiff avers that the statements made by Defendant Saloio to Lt. Meisner were thinly veiled threats and coercive and done in an attempt to interfere with the Plaintiff's rights to secure due process and address the allegations of discrimination raised in her complaint to the MCAD.

99. Lt. Meisner told Chief Saloio that he (Meisner), "would be happy to talk to the (Town's) attorneys, but he would only tell them the truth."

100. On January 10, 2019, Lt. Meisner was interviewed by an attorney representing the Town of Tisbury regarding the Plaintiff's then pending complaint before the MCAD[1].

---

[1] The Plaintiff hereby incorporates for all purposes, the information contained in Ms. Roman's complaint to the MCAD against the Town of Tisbury.

101. During the interview with the Town's attorney, Lt. Meisner was supportive of the Plaintiff's position and the allegations she had made in her MCAD complaint against Defendants Max Sherman and the Town of Tisbury.

102. The substance of the interview between Lt. Meisner and the Town's attorney was subsequently provided to agents and employees of the Town, including Chief Saloio.

103. Lt. Meisner's comments regarding his investigation of Defendant Sherman and the conclusions he reached were not well received by the Defendants, including Defendant Saloio.

104. On January 16, 2019, a week after Lt. Meisner's interview with the Town's attorney, Defendant Saloio instructed Lt. Meisner to stay late. Chief Saloio called Lt. Meisner into his office and ordered him to turn over his service weapon, badge and ID card because Lt. Meisner was "all done."

105. The Plaintiff avers that the temporal proximity of Lt. Meisner's interview by the Town and his subsequent firing by Defendant Saloio was retaliatory and done for the sole purpose of intimidation in a further attempt to adversely impact the rights of the Plaintiff to seek redress of the allegations made in her MCAD complaint.

COUNT ONE- VIOLATION OF CIVIL RIGHTS 42 U.S.C., §1983
Defendants Town of Tisbury, Defendant Max Sherman and Defendant Mark Saloio, in their official and individual capacities.

106. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

107. Defendants Town of Tisbury, Defendant Max Sherman and Defendant Mark Saloio, in their official and individual capacities, and under color of law, attempted to interfere with, and did interfere with the Plaintiffs' exercise and enjoyment of rights secured by the Constitution and laws of the United States and the Massachusetts Declaration of Rights, including, but not limited to, her right to free speech, right to Procedural and Substantive Due Process, her right to continued employment and the right to participate in and petition and seek redress from Governmental abuse without retaliation.

108. The Plaintiff has suffered significant damages, including loss of employment opportunities; lost wages, benefits and other economic damages; costs and attorney's fees required to remedy the legal wrongs done to her; damages to her personal and professional reputation; and emotional distress.

109. The Plaintiff is also entitled to punitive damages because the Defendants acted with evil motive or intent, recklessly or with callous indifference to Plaintiff's federally and state protected rights.

COUNT TWO – MASSACHUSETTS CIVIL RIGHTS (M.G.L. ch. 12, §§ 11H, I)
v. Defendants Mark Saloio and Max Sherman in their official and individual capacities

110. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

111. The Defendants, in their official and individual capacity, attempted to interfere with, and did interfere with Plaintiff's exercise and enjoyment of rights secured by the Constitution and laws of the United States, and the Constitution and laws of the Commonwealth of Massachusetts, by threats, intimidation and coercion, including the Plaintiff's right to free speech, her protected right to seek redress in courts of law, her right of continued employment and right to participate in the Due Process of law, including, but not limited to, the wrongful interference by the Defendants regarding Officer Roman's complaint filed with the Massachusetts Commission Against Discrimination.

112. The Defendants Chief Saloio and Sherman, attempted to and did interfere with the Plaintiff's above stated rights by means of threats of discipline, economic coercion and retaliatory intimidation in an attempt to silence the Plaintiff's rights of free speech, her right to seek redress in a court of law, her rights of continued employment and her right to participate in the Due Process of law.

WHEREFORE, Plaintiff demands judgment against the Defendants on Count II, plus interest and costs of this action, and reasonable attorneys' fees as provided under M.G.L. c. 12, Section 11I.

COUNT THREE - M.G.L. c.151B- SEX/GENDER/ RACE DISCRIMINATION
v. Town of Tisbury, Defendant Max Sherman and Defendant Mark Saloio, in their official and individual capacities.

113. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

114. The discriminatory treatment of the Plaintiff, as described herein, violates the express provisions of M.G.L. c. 151B with regard to her gender, race and sexual identity.

115. There is direct and circumstantial evidence of bias on the part of the Defendants and its employees, including, but not limited to, the evidence set forth above.

116. In retaliation for Plaintiff's protected conduct described above, the Defendants and their agents and employees engaged in the retaliatory conduct described more fully above and subjected her to disparate treatment in the workplace, harassing conduct and a hostile work environment.

117. This hostile working environment and the conditions imposed upon the Plaintiff were severe or pervasive and the adverse action taken against the Plaintiff related to her gender, race and sexual identity adversely affected the terms and conditions of her employment.

118. Plaintiff alleges that all of the disparate treatment she has suffered due to her gender, race and sexual identity which are alleged in this Complaint is part of a continuing violation of the laws prohibiting discrimination against Plaintiff due to her gender, race and sexual identity.

119. Although the discrimination against Plaintiff due to her race, gender and sexual identity has existed for years, Plaintiff was also subjected to discriminatory and retaliatory treatment by the Town of Tisbury and its employees in other forms, including her attempts to be reinstated to her former position. That discriminatory treatment was tolerated and tacitly encouraged by the Defendants. The more recent retaliatory conduct she has been subjected to is a continuation of that prior discriminatory treatment.

COUNT FOUR – 20 U.S.C. § 1681, et seq. (Title IX)
Hostile Environment – Sexual Harassment and Discrimination
v. Town of Tisbury, Defendant Max Sherman and Defendant Mark Saloio, in their official and individual capacities.

120. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

121. As described more fully throughout this Complaint, and at all relevant times, this gender-based discrimination, retaliation and harassment created a hostile environment for Plaintiff because it was sufficiently severe, pervasive, or persistent so as to interfere with or limit Plaintiff's ability to perform her role as a police officer with the Town and subsequent employment.

122. As described more fully throughout this Complaint, at all relevant times the Defendants knew or should have known about the discrimination, retaliation and hostile work environment that existed for Plaintiff.

123. As described more fully throughout this Complaint, at all relevant times the Defendants failed to investigate and respond immediately and appropriately in a prompt, thorough and impartial manner and failed to take prompt and effective steps reasonably calculated to end the harassment, eliminate any hostile environment and its effects, and prevent the harassment and retaliation from recurring.

124. As a direct result of the failure of Defendants to take prompt and effective steps reasonably calculated to end the harassment, eliminate any hostile environment and its effects, and prevent the harassment from recurring Plaintiff suffered and continues to suffer from severe stress and anxiety.

125. As described more fully throughout this Complaint, at all relevant times, Defendants' conduct was outrageous and due to evil motive or reckless indifference for Plaintiff's rights and so outrageous as to demonstrate willful, wanton or reckless conduct.

## COUNT FIVE
### DEPRIVATION OF CIVIL RIGHTS - FAILURE TO SUPERVISE (42 U.S.C. § 1983)
v. Town of Tisbury and Defendant Mark Saloio, in their official and individual capacities.

126. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

127. The Town of Tisbury failed to properly supervise Defendant Sherman and encouraged or knowingly acquiesced in his conduct as described herein.

128. A direct link exists between the Town of Tisbury's failure to supervise and/or intervene in the actions of Defendant Sherman, and as a result of the depravation of her civil rights Plaintiff has suffered a loss of wages, benefits, reputation and earning capacity as well as suffering emotional and physical pain and distress and has incurred legal costs. All such damages continue to this date.

## COUNT SIX
### INTENTIONAL, IMPROPER INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP
v. Defendant Max Sherman and Defendant Mark Saloio, in their official and individual capacities.

129. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

130. As stated more particularly above, the Defendants acted with malice and in bad-faith by intentionally interfering with Plaintiff's employment relationship and opportunities with the Town of Tisbury and the Towns of Walpole and Westwood causing the loss of her job and job offer respectively.

131. The Defendants' conduct, as more particularly described above, has damaged Ms. Roman and caused her to incur legal fees and significant emotional distress.

132. The Defendants are liable to Plaintiff for the violations of law set forth above.

## COUNT SEVEN
### CONSPIRACY
v. Defendant Max Sherman and Defendant Mark Saloio, in their official and individual capacities.

133. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

134. As a result of the Defendants' actions in conspiracy, under color of law and otherwise, the Plaintiff's rights were interfered with, attempted to be interfered with, and that interference or attempted interference was by threats, intimidation or coercion and the Plaintiff was deprived of a property interest in public employment.

135. As a result of this intentional, willful, knowing, malicious and purposeful conspiracy the Plaintiff suffered the deprivation of her rights and a loss of public employment, wages and benefits, was forced to suffer great strain, hardship, and anxiety, was caused painful physical and mental suffering, and was subjected to humiliation.

THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL COUNTS.

Respectfully submitted,
For Plaintiff,
By her attorney,

*/s/ Timothy M. Burke*
Timothy M. Burke, BBO #065720
160 Gould Street, Suite 100
Needham, MA 02494-2300
Dated: November 24, 2020              (781) 455-0707

CERTIFICATE OF SERVICE

I hereby certify that this document filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this date. Paper copies will be mailed to those listed as non-participants on the ECF system.

Dated:  November 24, 2020              */s/ Timothy M. Burke*